**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DARRYL HAMILTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. |
| vs. | ) | Judge |
| | ) | |
| TARRY WILLIAMS, Warden, | ) | Case Number of State Court |
| Stateville Correctional Center, | ) | Conviction: 99 CR 16846-01 |
| | ) | |
| Respondent. | ) | |
| | ) | |

**PETITION FOR WRIT OF *HABEAS CORPUS* &
REQUEST FOR AN EVIDENTIARY HEARING**

Petitioner **DARRYL HAMILTON**, by his attorney Christopher S. Burrichter of Kirkland & Ellis LLP, in custody pursuant to a judgment by the Circuit Court of Cook County, Illinois, respectfully moves pursuant to 28 U.S.C. § 2254 this Court to vacate the conviction and sentence in *People v. Hamilton*, No. 99 CR 16846-01. Petitioner additionally requests an evidentiary hearing to further develop the allegations set forth herein.

This pleading is set forth in the form dictated by the rules governing proceedings in the United States District Courts under § 2254 of Title 28, United States Code, and includes all information required by Local Rule 81.3. The opening section states the offense of conviction and sentence imposed; Part I sets forth the history of this proceeding through trial and direct review; Part II provides a summary of the post-conviction proceedings; Part III states the grounds and supporting facts upon which Petitioner claims his conviction is in violation of the United States Constitution; and Parts IV and V contain further required technical information.

In support of this request for relief, Petitioner states the following:

## CONVICTION AND SENTENCE IMPOSED

1.    *Name and location of court where conviction was entered:*

Conviction and sentence in Case No. 99 CR 16846-01 was imposed by the Circuit Court of Cook County, Illinois, the Honorable Judge James Rhodes presiding.

2.    *Date of judgment of conviction:*

On February 20, 2004, after a bench trial, Petitioner was found guilty of aggravated kidnapping.

3.    *Offense of which petitioner was convicted:*

Petitioner was convicted of aggravated kidnapping under 720 ILCS 5/10-2(a)(5) (West 1999).

4.    *Sentence imposed:*

On March 28, 2006, Petitioner was sentenced to a term of natural life imprisonment in the custody of the Illinois Department of Corrections pursuant to 720 ILCS 5/33B-1 (West 2006) (repealed by Pub. Act 95–1052 § 93 (eff. July 1, 2009)).

5.    *Petitioner's plea:*

Petitioner pled not guilty.

## PART I - TRIAL AND DIRECT REVIEW

1.    *Kind of trial:*

Petitioner had a bench trial.

2.    *Whether Petitioner testified at trial:*

Petitioner testified at his trial.

2

3.      *Kind of Appeal:*

Petitioner filed an appeal from the judgment of conviction in the Appellate Court of the State of Illinois, Sixth Judicial District.   On appeal, Petitioner argued that the evidence was insufficient to support a finding of guilt because the State failed to present any evidence showing that the alleged kidnapping victim, Monique Griffith, was secretly confined, and thus Petitioner's conviction and natural life sentence should be vacated.   The appellate court affirmed his conviction on June 13, 2008.

Petitioner also filed a Petition for Leave to Appeal in the Illinois Supreme Court.   On September 24, 2008, the Supreme Court denied his petition.

Petitioner did not petition the United States Supreme Court for a writ of *certiorari*.

## PART II - COLLATERAL PROCEEDINGS

1.      *Previous petitions, applications, and motions:*

On May 6, 2009, Hamilton filed a *pro se* post-conviction petition.   On August 20, 2010, with the *pro bono* assistance of Kirkland & Ellis LLP, Hamilton filed an amended post-conviction petition before the Honorable Brian Flaherty.   In his amended post-conviction petition, Petitioner raised three claims alleging that his conviction for aggravated kidnapping was the result of a denial of his constitutional rights under the Illinois and United States Constitutions: 1) the State failed to produce exculpatory evidence; 2) the judge erred in accepting Hamilton's purported waiver of his constitutionally-mandated right to a jury trial after only a perfunctory inquiry into whether and to what extent the prescription pain medication Hamilton was taking at the time affected his mental capacity; and 3) Hamilton's trial and appellate counsel failed to raise the aforementioned claims and also failed to raise the fact that Hamilton was not

3

eligible for a life sentence under the Habitual Criminal Act, 720 ILCS 5/33B-1 (West 2006). The petition was dismissed on March 2, 2012. (Ex. 1, 3/2/12 Hearing Tr. at 6).

Petitioner filed an appeal of the court's dismissal of his petition. On September 30, 2013, the Appellate Court of Illinois, First District affirmed the Circuit Court's dismissal of Hamilton's post-conviction petition. *People v. Hamilton*, No. 1-12-0895-U, 2013 WL 5494001 (Ill. Ct. App. Sept. 30, 2013) (attached as Ex. 2). Petitioner filed a Petition for Leave to Appeal to the Illinois Supreme Court, which was denied on January 29, 2014. (Ex. 3, 1/29/14 Opinion).

2-4. *Other Proceedings:*

Petitioner has filed no other petitions in state court in relation to this conviction. Petitioner has filed no previous petitions for habeas corpus relief in federal court with respect to this conviction. There are no other legal proceedings pending in any court other than this petition with respect to this conviction.

## PART III.   CLAIMS FOR RELIEF

Mr. Hamilton asserts that his conviction and sentence violate the Constitution of the United States in that: (1) he was convicted of an offense without sufficient evidence to support his conviction, as guaranteed by the Fourteenth Amendment and the Supreme Court's ruling in *Jackson v. Virginia*, 443 U.S. 307 (1979); (2) the State refused to provide him with potentially exculpatory evidence, as guaranteed by the Sixth and Fourteenth Amendments; (3) he did not knowingly and voluntarily waive his right to a trial by jury, as guaranteed by the Sixth and Fourteenth Amendments; (4) he was improperly sentenced under a sentencing statute under which he was ineligible, in violation of the Fourteenth Amendment's fundamental fairness guarantee; and (5) he was denied effective assistance of counsel, as guaranteed by the Sixth Amendment and the Supreme Court's ruling in *Strickland v. Washington*, 466 U.S. 668 (1984). Hamilton respectfully asks this Court to rectify these constitutional violations.

Under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1), a petitioner is entitled to relief if "the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id*. at 405-06. A state court decision violates the "unreasonable application" provision if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407.

Under Section (d)(2), while state court factual findings are entitled to deference, "relief may be had where the petitioner can show by clear and convincing evidence that the state court's factual determinations were unreasonable." *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002). The role of deference is further relaxed where the state courts failed to hold a full and fair evidentiary hearing on petitioner's claims. "If . . . a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th. Cir. 2004); *see also Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007) (holding that

habeas courts reviewing factual determinations made without a hearing are not as constrained in their review of state court credibility findings of witnesses).

If review is permitted under Section 2254(d), an evidentiary hearing may be held to determine whether petitioner is being held in violation of the Constitution under Section 2254(a). *See Mosley v. Atchison,* 689 F.3d 838 (7th Cir. 2012) (citing *Cullen v. Pinholster,* 131 S. Ct. 1388, 1412 (2011) (Breyer, J., concurring in part and dissenting in part)).

### 1. Statement of Facts

### A. Evidence Presented at Trial

Mr. Hamilton was a victim of the events on June 29, 1999, not a collaborator. Members of the Vice Lords, a Chicago street gang, were bent on revenge against James Williams, a member of the rival Black Disciples street gang, after Williams sold them "bad drugs." But in order to arrange a meeting with Williams, the Vice Lords needed a middle man—someone who was friendly with Williams and who could arrange a meeting without raising suspicion. Hamilton was the unfortunate target. The Vice Lords knew that Hamilton was friendly with Williams and they approached Hamilton about facilitating a "drug deal" with Williams. Hamilton agreed to organize a meeting, not knowing that the meeting was merely a set-up.

On June 29, 1999, the day of the meeting, Hamilton learned that the Vice Lords were not interested in purchasing drugs at all, but were merely using the meeting as a pretext for getting to Williams and exacting their revenge. (Ex. 4, 2/19/04 Trial Tr. at 54-55).

As soon as Hamilton understood the Vice Lords' true plan, he immediately tried to back out. (*Id.* at 55-57 ("I replied and told them, hell no, I am not going to get involved in that[.]")). Hamilton explained to the Vice Lords that it would essentially be suicide for Hamilton to facilitate their revenge scheme because Williams would immediately recognize Hamilton. (*Id.* at 55-57).

6

The Vice Lords refused to let Hamilton leave. The gang pointed their guns at Hamilton, beat and pistol-whipped him, and threw him into a van. (*Id.* at 103-04). When Hamilton broke free and ran, the Vice Lords chased Hamilton, caught him, dragged him across the pavement, and threw him back into the van. (*Id.* at 104). There, the gang continued to beat Hamilton with hands, fists, and guns for about fifteen minutes. (*Id.* at 105-06). Finally, the gang threatened to kill Hamilton's family unless he agreed to cooperate and call Williams. (*Id.* at 106) Beaten and scared, Hamilton made the call and told Williams that he was coming over with friends to purchase a half-kilo of cocaine. (*Id.* at 107).

Hamilton sat trapped inside the van as the Vice Lords approached Williams' apartment. (*Id.* at 62-63). Members of the Vice Lords jumped from the van and drew guns on Williams and his girlfriend, Monique Griffith, who also happened to be there. (Ex. 5, 11/25/03 Trial Tr. 18; Ex. 6, 8/20/10 Amended Petition for Post-Conviction Br. at 3). The Vice Lords forced Williams and Griffith into the van at gunpoint, and then sped away. (Ex. 5 at 21-23). A neighbor watched Williams and Griffith get in the van and saw the van and its occupants drive away. (Ex. 4 at 136-37) The police immediately gave chase and Officers Mora, Cap, and Fisher pulled the van over a few minutes later on the Bishop-Ford expressway. (Ex. 7, 1/20/04 Trial Tr. 5-6).

### B.    Darryl Hamilton's Trial Court Proceedings

Hamilton never had a fair and adequate opportunity to present these facts to the trial judge. Evidence that supported Hamilton's defense that he was an unwilling participant—a victim—of the Vice Lords' violence never came through because of (1) the state's failure to disclose exculpatory evidence about Williams' background, and (2) Hamilton's trial counsel's failure to follow the proper procedure for gathering potentially-exculpatory *Brady* evidence.

For example, on the eve of Hamilton's trial, Hamilton's defense counsel received a facsimile from the United States Attorney's Office informing him that Williams was the target of

a federal grand jury investigation due to his involvement with a large-scale drug operation. (Ex. 8, 11/18/03 Trial Tr. 5). The fax also revealed that a search warrant for Williams' home had recently recovered sixty thousand dollars' worth of crack cocaine. (Ex. 9, Vice Report and Warrant). This evidence corroborated Hamilton's theory that he was an unwillingly participant in a drug-related gang battle because it supported his testimony that he would never have pursued such a high-level drug dealer. Not surprisingly, the trial court granted counsel's motion to compel and ordered the State to produce the search warrant and any other evidence relating to the investigation. (Ex. 8 at 3, 13). But the State never complied, and defense counsel inexplicably agreed to proceed with trial without this vital information, even after the judge expressed concern about proceeding. (*Id.* at 13-14; Ex. 5 at 5). At trial, Williams—the key player in the story—disappeared from the prosecution's story, and with him all evidence of Williams' criminal history and the back story that led up to the confrontation between Williams and the Vice Lords. Because the State improperly withheld this evidence, the court lacked the context necessary to understand Hamilton's defense.

This was not the only error committed at trial. In another example, defense counsel subpoenaed two federal law enforcement officers to question them about the Williams investigation, but counsel failed to file the correct paperwork. (Ex. 10, Subpoenas). Counsel needed to, but did not, follow certain specific procedures for requesting the disclosure of materials relating to active federal investigations. (Ex. 11, 2/13/04 Trial Tr. 8-9). As a result, the officers were legally barred from answering defense counsel's questions. (*Id.* at 21-47). But even when counsel realized his mistake, he never took steps to remedy it. (*Id.*). In another example, Hamilton's trial counsel permitted Hamilton to waive his right to a jury trial while

under the influence of a prescription-strength pain psychotropic drug that is widely-known to impair its users' decision making. (Ex. 5 at 9; Ex. 12, Physicians' Desk Reference website).

Because Hamilton was denied, exculpatory evidence and competent legal assistance, the outcome of his trial was all but assured. On February 20, 2005—following a bench trial that convened sporadically over three months—Hamilton was found guilty of aggravated kidnapping.

Hamilton continued to receive ineffective assistance of counsel after trial. Even though the State had the burden of proving that Hamilton was eligible for sentencing under the Illinois Habitual Criminal Act ("HCA") by producing a certified conviction, defense counsel accepted Hamilton's sentence as pre-ordained even before the State offered any evidence of his prior convictions. (Ex. 8 at 9 ("If [Hamilton is] convicted on this case, he's doing life,"); Ex. 5 at 9). Hamilton's sentencing counsel thus did not object when the judge imposed a life sentence without the benefit of an adversary's rebuttal or a complete sentencing record. Had Hamilton's counsel talked with his client and conducted any sort of investigation, however, he would have learned that Hamilton's two prior convictions *did not qualify* as "strikes" under the applicable statute. In another stunning misfire, Hamilton's sentencing counsel argued mitigation in the face of a sentencing scheme that left no room for judicial discretion. (Ex. 13, 6/8/06 Trial Tr. 14-16).

On June 28, 2006, the trial court sentenced Hamilton to a term of natural life imprisonment. (Ex. 14, Order of Commitment and Sentence to Illinois Department of Corrections).

### C.   Darryl Hamilton's Direct Appeal

Mr. Hamilton's appellate counsel failed to develop any of above-mentioned issues in his direct appeal. On direct appeal, counsel raised only one ground for relief: the State failed to prove that Hamilton was guilty of aggravated kidnapping because it failed to show that Hamilton "secretly confined" Griffith, which was an element of the offense. On June 13, 2008, the

appellate court affirmed Hamilton's conviction. (Ex. 15, Order Affirming Defendant's Conviction at 3). On June 13, 2008, Hamilton filed a Petition for Leave to Appeal to the Illinois Supreme Court. The Supreme Court denied his Petition on September 24, 2008. (Ex. 16, Judgment Denying Leave to Appeal).

### D.      Darryl Hamilton's Post-Conviction Petition

On May 6, 2009, Mr. Hamilton filed a *pro se* post-conviction petition. On August 20, 2010, with the *pro bono* assistance of Kirkland & Ellis LLP, Hamilton filed an amended post-conviction petition before the Honorable Brian Flaherty. This petition raised three claims alleging that his conviction for aggravated kidnapping was the result of a denial of his constitutional rights under the Illinois and United States Constitutions: (1) the State failed to produce exculpatory evidence; (2) the judge erred in accepting Hamilton's purported waiver of his constitutionally-mandated right to a jury trial after only a perfunctory inquiry into whether and to what extent the prescription pain medication Hamilton was taking at the time affected his mental capacity; and (3) Hamilton's trial and appellate counsel failed to raise the aforementioned claims and also failed to raise the fact that Hamilton's underlying convictions could not apply toward a life sentence under the HCA.

Hamilton's post-conviction counsel undertook a comprehensive search for Hamilton's prior plea bargaining agreements and any transcripts of corresponding court appearances. (*See* Ex. 17, Nega Affidavit). Hamilton's 1980 and 1995 plea agreements contained critical information about the purported prior "Class X" convictions and, for that very reason, the State requires that the records be preserved for future appeals and trials. ILCS. S. Cт. R. 402(e); *see People v. Whitfield,* 840 N.E.2d 658, 676-77 (Ill. 2005). The Markham County Courthouse was unable to locate the requested documents. (Ex. 17 at ¶¶2-5). The Bridgeview County Courthouse was similarly unsuccessful and indicated that the files might have been destroyed.

(*Id.* at ¶5). The State's record-keeping failures, combined with Hamilton's trial counsels' incompetence, all but sealed Hamilton's fate.

On November 19, 2010, the State of Illinois filed a Motion to Dismiss the Petition for Post-Conviction Relief arguing that Hamilton was not entitled to an evidentiary hearing because the exculpatory evidence related to Williams' criminal history did not satisfy the requirements outlined in *Brady v. Maryland,* 373 U.S. 83 (1963), and that his allegations of ineffective assistance and a fault jury waiver were "without merit." (Ex. 18, State's Motion to Dismiss). Hamilton filed a response to the State's Motion to Dismiss on February 25, 2011. (Ex. 19, Petitioner's Reply to Motion to Dismiss). On March 2, 2012, the circuit court granted the State's motion and disposed of Hamilton's post-conviction petition without an evidentiary hearing. (Ex. 1 at 6).

### E.      Darryl Hamilton's Appeal of the Dismissal of His Post-Conviction Petition

Mr. Hamilton filed an appeal of the court's dismissal of his petition. On September 30, 2013, the Appellate Court of Illinois, First District affirmed the circuit court's dismissal of Hamilton's post-conviction petition. *Hamilton*, 2013 WL 5494001 (Ex. 2). The appellate court found that: (1) the State's failure to produce exculpatory evidence that would have proven Williams' status as a gang leader and corroborated Hamilton's defense did not constitute a *Brady* violation; (2) Hamilton did not suffer any prejudice as a result of his trial counsel's failure to pursue this exculpatory evidence; (3) Hamilton did not offer sufficient evidence to prove that the State violated his 1980 and 1995 plea agreements; and (4) Hamilton did not present sufficient evidence that his pain medication impacted his ability to make an intelligent waiver of his right to a jury trial. *See id.*

Hamilton filed a petition for leave to appeal to the Illinois Supreme Court which was denied on January 29, 2014.

**2.      The Illinois Appellate Court's Opinions Warrant Habeas Relief.**

The Illinois Appellate Court's decisions regarding Hamilton's claims were contrary to clearly established Federal law, and involved unreasonable application of Federal law.  *Taylor*, 529 U.S. at 412-13.  Hamilton is entitled to habeas relief on five separate grounds, each of which has been presented to the highest court having jurisdiction.

**A.      <u>Claim I:  Hamilton's Conviction Violated His Right To Due Process Because the State Failed To Prove Secret Confinement Beyond A Reasonable Doubt</u>**

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A federal court analyzing the sufficiency of evidence under habeas review must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  When "no rational trier of fact could find guilt beyond a reasonable doubt," the convictions must be overturned on habeas review.  *Id.* at 317.  Hamilton was convicted of aggravated kidnapping even though the State failed to prove beyond a reasonable doubt that he "secretly" confined victim Monique Griffith when she was driven down a public highway in full view of her neighbors and police.  His conviction must therefore be overturned.

To sustain a conviction in Illinois for aggravated kidnapping, the State was required to prove beyond a reasonable doubt that Hamilton "secretly confined another against his or her will."  720 ILCS 5/10-1(a)(1).  The term "secret" is interpreted to mean "concealed, hidden, or not made public."  *People v. Pasch*, 604 N.E.2d 294, 316 (Ill. 1992).  In the case of *Pasch*, the Illinois Supreme Court reversed a conviction for aggravated kidnapping because the victim's

sister was aware that the defendant was holding the victim inside a certain apartment for 36 hours. *Id.* The Illinois Supreme Court insisted that "secret confinement" is not the same as taking a hostage. *Id.* Instead, the State's evidence could "not convert that which was otherwise well known to something that was secretive." *Id.*; *see also People v. Trotter*, 864 N.E.2d 281, 282, (Ill. App. Ct. 2007), *overruled on other grounds by People v. Harrison*, 877 N.E.2d 432, 287-88 (Ill. 2007) (baby being held in a bathroom could not be secretly confined because members of the public were aware of the child's presence at all times).

In this case, the Illinois Appellate Court concluded that there was evidence sufficient to prove beyond a reasonable doubt that Hamilton was guilty of aggravated kidnapping. The Appellate Court summarily dismissed Hamilton's arguments to the contrary:

> [D]efendant and his accomplice attempted to elude law enforcement when he did not pull over for the patrol cars, defendant instructed Griffith to put her head down in the back of the van so she would not be visible to the public, and defendant and his accomplice were traveling down a public highway. We therefore find that defendant secretly confined Griffith within the meaning of the statute, and defendant was correctly found guilty of aggravated kidnaping beyond a reasonable doubt.

(Ex. 15 at 7). The Court added that Monique Griffith was not held "in a fixed location where her presence was widely known." (*Id.* at 6).

Here, as in *Pasch*, the undisputed evidence in Hamilton's case establishes that someone knew where the victim was being held at all times. Either a civilian or a Calumet City Police officer was aware of Ms. Griffith's location in the van. (Ex. 4 at 136-37; Ex. 7 at 5-6). The parties stipulated that Rasheeda Brown, a tenant in the same building as Williams and Ms. Griffith, saw Monique Griffith and James Williams being forced into a van at gunpoint. (Ex. 4 at 137) The van pulled out of the parking lot and "a few seconds after the van left" Brown saw a police car turn on its sirens and pursue the van. (*Id.* at 138). For his part, Officer Mora testified

that he received a call that day regarding a robbery in progress. (Ex. 7 at 12-13). He immediately saw the van drive by and Officer Mora pursued it until the van crashed into a median and stopped. (*Id.*). Within those ten minutes, Officers Cap and Fisher also received a call about a "pursuit in progress" and immediately joined Officer Mora in the chase. (*Id.* at 5; Ex. 20, 1/23/04 Trial Tr. 7-9). Because Griffith's location was never in question, the State did not, and could not, prove "secret" confinement.

The appellate court erred by distinguishing Hamilton's case from *Pasch* on the basis that Hamilton was attempting to elude detection. (Ex. 15 at 5-6 ("Our case is distinguishable from *Pasch*, however, because here defendant was traveling in a van with Griffith in the back with her head down, attempting to elude detection[.]")). This distinction is irrelevant. Even if Hamilton **attempted** to elude detection, he was not successful. Various people knew where Ms. Griffith was at all times. Attempted ***and failed*** secrecy is not the same as actual secrecy, and "secret confinement" is not the same act as "attempted secret confinement." *See Pasch*, 604 N.E.2d at 316 ("[T]he fact that no one could rescue [the victim] because of the hostage situation did not convert that which was otherwise well known to something that was secretive.")

The State did not—and could not—prove "secrecy" and therefore no rational trier of fact could find that the State proved the elements of kidnapping beyond a reasonable doubt. This Court should grant the writ of habeas corpus because insufficient evidence exists to support Hamilton's conviction for aggravated kidnapping. *See, e.g., Langston v. Smith*, 630 F.3d 310, 320 (2d Cir. 2011) (granting federal habeas relief where the State's evidence failed to establish defendant assaulted undercover police officer "in furtherance of" obtaining the gun used in assault, an element of the charge); *Brown v. Palmer*, 441 F.3d 347, 353 (6th Cir. 2006) (granting

federal habeas relief where the State failed to prove aiding and abetting element beyond a reasonable doubt).

  **B.**  **Claim II: The Illinois Appellate Court Unreasonably Applied Clear Federal Law When It Did Not Require The Disclosure Of All Exculpatory Evidence**

  Habeas corpus relief is warranted when a state court's decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* "A state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010). A state court's application of *Brady* is unreasonable if it is "well outside the bounds of permissible differences of opinion." *Id.* at 399 (quoting *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008)). The Illinois state post-conviction appellate court unreasonably applied *Brady* when it held that Hamilton was not entitled to the evidence related to victim James Williams.

  In this case, the Illinois Appellate Court concluded that it "d[id] not see how evidence of Williams's [sic] crimes and status" as a gang leader could affect the credibility of Griffith's testimony and "d[id] not see" how that same evidence affected the credibility of Hamilton's testimony that he was an unwilling participant in this event. *Hamilton*, 2013 WL 5494001, at *3 (Ex. 2). The Appellate Court dismissed any such evidence as "largely redundant," reasoning that the value of this evidence was negated by the fact that the trial court heard other testimony that Williams sold drugs. *Id.*

  The Supreme Court in *Brady* ruled that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S.

at 87. A defendant must show that the suppressed evidence was both "favorable to the accused" and material. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence is "favorable" to the accused if it "would tend to show his innocence" or if it "could be used to impeach" a witness. *Goudy*, 604 F.3d at 398. Evidence is "material" if its disclosure would create a "reasonable probability that the [trial] result would have been different." *Id*. at 399. The "reasonable probability" standard is lower than a "preponderance" of the evidence standard; a petitioner need only demonstrate that the withheld evidence undermines confidence in the verdict. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). According to the Seventh Circuit, "[w]hen the cumulative effect of all the suppressed information is to undermine confidence in the verdict, such a reasonable probability exists." *Goudy*, 604 F.3d at 399 (citing *Kyles*, 514 U.S. at 434).

Hamilton sought all "records, reports, files, street files, G.P.R., RD #'s, any notes, or information concerning James C. Williams AKA Fredy G." (*See* Ex. 10). Hamilton's trial court judge recognized the important, potentially exculpatory nature of Hamilton's requested *Brady* evidence:

> [I]t also appears that there is some possibility that they might be in possession of some evidence that might be exculpatory in this case, and they have an obligation to respond to a subpoena so that we can find time to --

(Ex. 20 at 49-50) (quotation ends where Prosecutor cuts off Judge Rhodes). Hamilton's trial court judge granted the defense counsel's motion for exculpatory evidence—a motion with which the State never complied.[1] (Ex. 8 at 13).

Although the State dropped Williams from its case and prosecuted Hamilton only for a crime against Ms. Griffith, Williams' girlfriend, this did not relieve the prosecution of its *Brady*

---

[1]  Hamilton's post-conviction counsel has sought this information through Freedom of Information Act and *Touhy* requests. This additional investigation is ongoing.

obligations. Williams continued to be a key player in the events of June 1999—and a key piece of Hamilton's defense.[2]

The withheld evidence of Williams' crimes and status as a gang leader was favorable to Hamilton. First, the evidence would have supported Hamilton's defense that he was caught in the middle of a battle between two rival gangs. The evidence would have added important context for this gang rivalry. For instance, Hamilton testified that he did not want to go after Williams because it would be "suicide," and it is reasonably probable that evidence showing the **magnitude** of Williams' drug enterprise would bolster Hamilton's credibility. (Ex. 4 at 55-57). Indeed, the trial judge **agreed** that this evidence was potentially exculpatory. (Ex. 20 at 49-50

The evidence also could have been used to impeach Monique Griffith, who had an intimate relationship with Williams and may have been involved in his criminal enterprise. This information could have shown bias, or discredited Griffith's testimony.

Moreover, the withheld evidence was material to the outcome of Hamilton's case. The evidence of Williams' criminal history as the leader of a federally-investigated criminal enterprise would have cast reasonable doubt on Hamilton's aggravated kidnapping charge. Under Illinois law, the crime of kidnapping occurs when a person knowingly and secretly confines another against his will, 720 ILCS 5/10-1(a)(1) (West 2004), and the offense is elevated to aggravated kidnapping if the defendant is armed with a firearm. 720 ILCS 5/10-2(a)(6) (West 2004). The withheld evidence supported Hamilton's contention that he was forced in the middle of an existing gang rivalry between Williams and the Vice Lords. The trial court's acceptance that Williams "sold drugs" is not an adequate substitute for considering concrete and specific

---

[2]  Hamilton's counsel himself was also discredited when he referred to these facts about James Williams during his opening statement but was never permitted to introduce the evidence to support his statements, because the State withheld that evidence.

evidence about the ***magnitude*** of Williams' gang leadership and criminal enterprise. Because the State withheld this evidence, the trier of fact was left to accept Hamilton's story without any corroborating evidence.

The Seventh Circuit explained that a defendant is not required to show that the withheld evidence would actually establish innocence. *Goudy*, 604 F.3d at 399. To demonstrate materiality, a defendant must merely show that "the cumulative effect of the new evidence creates a reasonable probability of a different result at trial." *Id*. at 400. It is clear that the Illinois Appellate Court evaluated Hamilton's requested evidence without regard to its *cumulative* effect. This evidence, when combined with Hamilton's testimony, would have offered the full picture of the events of June 29, 1999.

This Court should grant the writ of habeas corpus because the Illinois Appellate Court's decision "involved an unreasonable application of . . . the "reasonable probability" standard, as required by *Bagley*, 473 U.S. at 682, and the cumulative effect test, as put forth in *Goudy*, 604 F.3d at 399 and *Kyles*, 513 U.S. at 440. What the appellate court dismissed as "redundant" was in fact corroborative, illuminating, and powerful evidence that, when viewed cumulatively with existing evidence, created a "reasonable probability" of a different result at trial. This unreasonable application of *Brady* warrants habeas relief.

> **C.** **Claim III: The State Courts Unreasonably Applied Federal Law in Denying Darryl Hamilton's Claim That He Did Not Intelligently Waive His Constitutional Right to a Jury Trial**

This Court should grant Mr. Hamilton's writ for habeas corpus because Hamilton did not intelligently and competently waive his right to a trial by jury, as required by the Sixth and Fourteenth Amendments. *See Taylor*, 529 U.S. at 412-13 (habeas relief is necessary when a state court decision is contrary to Federal law). Criminal defendants are entitled to a trial by jury unless they intelligently and competently waive this constitutional right. *Johnson v. Zerbst*, 304

18

U.S. 458, 465 (1938) ("This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused."). The decision to waive a jury trial is among those fundamental decisions about a case the defendant alone has the authority to make. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to . . . waive a jury"). Whether or not there is an "intelligent, competent, self-protecting waiver of jury trial" depends on the "unique circumstances of each case" and counsel may not make this decision on his behalf. *U.S. ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1179 (7th Cir. 1983).

Hamilton was taking Tylenol with codeine to relieve the severe pain caused by a jaw injury he suffered in jail just days before his trial was scheduled to commence. (Ex. 5 at 9). Codeine is a narcotic painkiller and a member of the drug class opiates, and the most frequently observed side effects include drowsiness, lightheadedness, dizziness, sedation, shortness of breath, nausea, and vomiting. (*See* Ex. 12). Patients who are prescribed Tylenol with codeine are advised to not participate in any activities that require their full attention. (*Id.*) Given Hamilton's impaired state, he was not capable of validly waiving his constitutional right to a jury trial. The record proves that the presiding judge was aware that Hamilton was taking prescription pain medication at the time of his purported waiver. (Ex. 5 at 9).

The trial court judge erred when he failed to test and evaluate codeine's effect on Hamilton's capacity to "intelligently and competently" waive his right to a jury trial. Hamilton's broken jaw was wired shut when he appeared before the judge the day of his purported waiver. This caused him to talk "a little funny" and a casual observer could not have known whether his garbled speech was caused by the injury, the pain medication, or some combination of the two.

(Ex. 5 at 3). When the judge addressed the defendant, Hamilton mostly responded in monosyllables. (*Id.* at 7-10). The trial transcripts indicate that the judge did not ask any probing follow-up questions after learning that Hamilton was under the influence of a powerful, prescription-strength psychotropic drug. (*See id.* at 9-10). This limited exchange did not allow the judge to accurately assess whether Hamilton's judgment was impaired by the pain medication.

Moreover, Hamilton's lawyer, the person best situated to assist the court in evaluating whether Hamilton was impaired by the pain medication, did not have a chance to speak with Hamilton before court convened that day. (*Id.* at 3). The defense counsel's only interaction with Hamilton that day was a short conversation before the waiver was put before the court. (*Id.* at 7 ("Only thing I'm asking is five minutes, just to have my client mumble at me.")).

The Illinois Appellate Court devoted a mere six sentences to Hamilton's argument that he did not waive his right to a jury trial. According to the court, "[t]he transcript shows that Hamilton informed the court about his pain medication and his education, and told the court he wanted a bench trial." *Hamilton*, 2013 WL 5494001, at *3 (Ex. 2). The court stated that Hamilton did not present any evidence that Tylenol III "had significant psychotropic effect, or that he did not actually understand his right to a jury trial when he waived it." *Id.* Both statements are beside the point.

In Darryl's case, the court did *not* ask whether the pain medication impaired his ability to understand the consequences of waiving his right to a jury trial. Rather, the court asked if Darryl was on pain medication and then simply inquired, "You want to go ahead with your trial today even though your jaw was broken and you're on pain medication?" (Ex. 5 at 9). The court did

not ask whether Darryl's use of pain medication impacted his ability to understand the ramifications of waiving his important constitutional right to a jury trial.

The fact that the judge *knew* about the pain medication is irrelevant to the question of whether he adequately explored the *effect* of that medication on Hamilton's mental capacity. Federal law shows that the absence of a colloquy between the judge and a defendant is probative of whether a defendant knowingly and voluntarily waived his right to a jury trial. *See*, *e.g.*, *United States v. Duarte-Higareda*, 113 F.3d 1000, 1003 (9th Cir. 1997) ("We conclude that the district court erred in failing to conduct a colloquy with Duarte to ensure that his jury waiver was made voluntarily, knowingly, and intelligently.").

There is, of course, no way to turn back the clock and test Hamilton's competence on November 25, 2003. We are left with only these undisputed facts which show: (A) Hamilton was under the influence of prescription-strength pain medication at the time of his purported waiver; (B) Hamilton's jaw was wired shut at the time he appeared in front of the judge; and (C) the judge was aware of the potential competency issue. (Ex. 21, D. Hamilton Medical Records). But instead of addressing this red flag by asking follow-up questions designed to probe further into the potential effects of that medication, the judge dropped the issue entirely and accepted the purported jury waiver without question. In doing so, the trial judge failed in his constitutional duty. This limited inquiry clearly does not satisfy the high threshold for a jury waiver outlined in decades of Supreme Court jurisprudence. *See Zerbst*, 304 U.S. at 465 ("[W]hether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.").

Hamilton was denied his constitutional right to a jury trial when the trial court accepted his purported jury waiver after only perfunctory inquiry into whether and to what extent

Hamilton's mental capacity was affected by the pain medication he was taking. The state post-conviction appellate court unreasonably applied federal law by upholding the lower court's decision in the face of clear evidence that the trial judge knew of this competency issue but failed to ask the follow-up questions necessary to ensure that Hamilton's waiver was "intelligent and competent." This Court should therefore grant Hamilton's writ of habeas corpus.

### D.  Claim IV:  Hamilton  Was Incorrectly Sentenced Under the Illinois Habitual Criminal Act

Hamilton is entitled to a writ of habeas corpus because he was improperly sentenced under a sentencing statute for which he is ineligible, in violation of his Fourteenth Amendment contract rights and fundamental fairness guarantees. The Fourteenth Amendment guarantees all citizens, including those in prison, the right to due process under the law. U.S. Const. amend. XIV. One of these due process rights is a prisoner's contract-based right to have the terms of his or her plea agreements enforced. *Santobello v. New York*, 404 U.S. 257, 262-63 (1971). Under *Santobello*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. The Supreme Court held that a prisoner's constitutional rights can be violated even if the State breaches the prisoner's plea agreement inadvertently. *Id.* at 263.

Moreover, the Due Process Clause of the Fourteenth Amendment requires criminal prosecutions to comport with prevailing notions of fundamental fairness. *See*, *e.g.*, *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.")

Before it was repealed, the Habitual Criminal Act ("HCA") mandated a sentence of natural life in prison if a defendant were convicted of three separate "Class X" offenses within a

22

20-year period.[3]  *See* 720 ILCS 5/33B-1 (West 2006) (repealed by Pub. Act 95–1052 § 93 (eff. July 1, 2009)).  At Hamilton's sentencing hearing, the State introduced evidence of two prior crimes Hamilton committed, and claimed that these crimes qualified as valid "Class X" felonies. (Ex. 13 at 14).  However, neither crime qualified as a prerequisite "Class X" offense.  Hamilton was thus improperly sentenced under the HCA.

### (1) Hamilton's 1980 Conviction Should Not Qualify as A "Class X" Felony for the Purposes of Illinois' Habitual Criminal Act

The Supreme Court requires that promises from a prosecutor during plea negotiations "must be fulfilled."  *Santobello*, 404 U.S. at 262.  Other circuits have clearly stated that an oral plea agreement—without any written documentation—must be enforced, and its existence is a question of fact for an evidentiary hearing.  *See United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) ("Proof of the Government's refusal to abide by such an oral promise would clearly constitute evidence of 'government overreaching' or 'fraud in the inducement,' admissible without running afoul of the parol evidence rule." (internal citation omitted)).  In *White*, the Fourth Circuit remanded a habeas petition for a full evidentiary hearing to determine whether the government offered an oral plea agreement.  *Id.* at 302 ("[J]ust as the undisputed facts fail to demonstrate that the Government did *not* make an oral promise, they also fail to demonstrate the Government did make the alleged promise. Rather, the facts as to this all-important matter are hotly disputed.  Summary judgment on this record would clearly be improper.").

Here, Hamilton's 1980 conviction does not qualify under the HCA because his negotiated plea was contingent on assurance from the State's Attorney that this conviction would not be used against him for future sentence enhancements so long as Hamilton did not commit another

---

[3]    The HCA was repealed in 2009.  Unfortunately, this statute was in effect at the time of Hamilton's sentencing in 2006.  Throughout this section we cite to the HCA as it read at the time of Hamilton's sentencing.

Class X felony for a period of ten years. Hamilton's later conviction did not occur until 1995—more than ten years later. Even so, the trial court used Hamilton's first conviction as a sentence enhancement under the HCA.

Due Process guarantees Hamilton the right to have the terms of his 1980 plea enforced according to the oral agreement. The absence of Hamilton's plea agreement should lead this Court to initiate an evidentiary hearing so as to ascertain the details of that agreement. *Id.* at 304. Hamilton should be granted his writ of habeas corpus because the State breached its agreement and thus violated Hamilton's due process rights.

### (2) Hamilton's 1995 Conviction Should Not Qualify as A "Class X" Felony for the Purposes of Illinois' Habitual Criminal Act

The Seventh Circuit has granted habeas for failure to admonish a defendant regarding Mandatory Supervised Release ("MSR").[4] In one example, *United States ex rel. Miller v. McGinnis,* the Seventh Circuit granted the writ because "the [] trial court failed to inform Miller that he would automatically receive an additional three year term of MSR following his incarceration," among other reasons. 774 F.2d 819, 823 (7th Cir. 1985); *see also U.S. ex rel. Baker v. Finkbeiner*, 551 F.2d 180, 183 (7th Cir. 1977) ("[T]he plea must withstand collateral attack unless the sentence actually imposed upon Baker significantly differed from the sentence which the prosecutor and the trial court promised him.").

Here, Hamilton's second conviction in 1995 did not qualify under the HCA because the trial court failed to inform Hamilton that a three-year MSR would be added to his sentence.[5]

---

[4] The Supreme Court has not expressly ruled on this issue. *Lockhart v. Chandler*, 446 F. 3d 721, 725 (7th Cir. 2006).

[5] The State lost all relevant records pertaining to Darryl's 1995 conviction. Darryl's counsel reached out to the State to no avail. (Ex. 17). Additionally, Darryl's counsel for these proceedings, Gay-Lloyd Lott, has since passed away and is therefore unavailable to provide evidence.

This Court should therefore grant Hamilton's writ of habeas corpus because the court failed to admonish him of the MSR and thereby violated Hamilton's due process right to understand the terms of his plea.  *McGinnis*, 744 F.2d at 823.

### (3) Hamilton's Life Sentence Pursuant to Illinois' Habitual Criminal Act Violates Prevailing Notions of Fundamental Fairness

The Due Process Clause of the Fourteenth Amendment requires criminal prosecutions to "comport with prevailing notions of fundamental fairness."  *E.g.*, *Trombetta*, 467 U.S. at 485. The Supreme Court has "long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."  *Id.*  To safeguard that right, the Court developed "what might loosely be called the area of constitutionally guaranteed access to evidence."  *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982).  "A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."  *Trombetta*, 467 U.S. at 485 (citing *Brady,* 373 U.S. at 87).

Hamilton was forced to prove the terms of his prior sentencing agreements in a manner that violates even the loosest notions of fundamental fairness.  First, the State of Illinois lost all records regarding Hamilton's prior plea agreements. (*See* Ex. 17).  It is fundamentally unfair to require a defendant to explain, on his or her word alone, the terms of his past plea agreements when the State was responsible for ***losing*** those very agreements.  *See*, *e.g.*, *Mayer v. City of Chicago*, 404 U.S. 189; *Evitts v. Lucey*, 469 U.S. 387 (1985) (holding that all criminal defendants have a right to their lower court records as part of their fundamental Fourteenth Amendment due process rights).  Hamilton's claims were dismissed without a post-conviction evidentiary hearing, which meant that Hamilton was not even given the chance to testify or offer other evidence of his prior plea agreements.  *See People v. Wheeler*, 912 N.E.2d 681, 687 (Ill.

25

App. Ct. 2009) ("At the [third stage] hearing, the trial court 'may receive proof by affidavits, depositions, oral testimony, or other evidence,' and 'may order the petitioner brought before the court.'" (internal citation omitted)).

Second, Hamilton's own lawyer stated on the record that it was "not necessary" to discuss Hamilton's prior convictions at the sentencing hearing even though they were the very crux of his sentencing under the HCA. Thus, Hamilton was clearly denied a meaningful opportunity to present a complete defense, as required by Supreme Court precedent, because his lawyer failed to do the necessary investigation. *Id.*

Given the numerous evidentiary issues and questions as to whether Hamilton even qualified for sentencing under this now-defunct sentencing scheme, fundamental fairness should provide Hamilton an opportunity to lay factual predicate and present evidence to the court at an evidentiary hearing, and explain why this sentencing scheme is not applicable to his conviction. The gravity of Hamilton's life sentence warrants a hearing on these facts.

> **E.     Claim V: The State Courts Unreasonably Applied the Principles of *Strickland* in Denying Hamilton's Ineffective Assistance of Counsel Claims**

The Sixth and Fourteenth Amendments to the United States Constitution guarantee every defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. The Supreme Court and Seventh Circuit articulate a two-prong test to determine whether counsel's performance prejudiced the defendant:

1) "[C]ounsel's representation "fell below an objective standard of reasonableness"; and

2) A reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 687-88; *Ruhl v. Hardy*, 743 F.3d 1083, 1091-92 (7th Cir. 2014). "Reasonableness" is measured by "prevailing professional norms." *Wiggins v. Smith*, 539 U.S.

510, 523 (2003). A "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome, but [it] does not require that a petitioner show that the deficient conduct more likely than not altered the outcome of the case." *Gutierrez v. Anglin*, 706 F.3d 867, 871 (7th Cir. 2013).

In *Harris v. Cotton*, 365 F.3d 552, 556 (7th Cir. 2004), the Seventh Circuit explained that a lawyer's procedural mistakes are not "strategic" decisions. The Court held, "[b]ecause his failure to obtain and present the report was a mistake, and not a calculated strategic decision, we find that his performance fell below the objective standard of reasonableness required by *Strickland*." *Id.* Similarly, here, Hamilton's counsel made procedural mistakes—mistakes that cannot be overlooked as strategic decisions.

In Hamilton's case, the Illinois Appellate Court did not address the issue of whether trial counsel's performance *itself* was deficient. Focusing only on the second prong, the court glossed over four failures made by trial counsel:

1) Counsel failed to file the correct paperwork to request *Brady* evidence;

2) Counsel failed to object to an inappropriate sentence enhancement;

3) Counsel allowed Hamilton to waive his right to a trial by jury while Hamilton was under the influence of drugs; and

4) Counsel failed to adequately investigate the facts of the case.

In arriving at its conclusions, the Illinois Appellate Court unreasonably applied United States Supreme Court case law under *Strickland* when it overlooked counsel's legion of fundamental procedural errors.

27

### (1)    The Performance of Hamilton's Lawyer Was Constitutionally Deficient

Defense counsel has a fundamental duty to investigate all possible defenses.  *See Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) ("Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery.  Such a complete lack of pretrial preparation puts at risk both the defendant's right to an 'ample opportunity to meet the case of the prosecution' and the reliability of the adversarial testing process." (internal citation omitted)).  The "reasonableness" of an attorney's performance is measured against "prevailing professional norms."  *Wiggins*, 539 U.S. at 523.  Under this metric, Hamilton's trial counsel failed in at least four distinct ways, each of which is independently sufficient to warrant habeas relief, and collectively these failures demand this Court's intervention.

### (a)    Counsel Failed to File the Correct Paperwork to Request *Brady E*vidence

Hamilton's counsel allowed trial to commence without *Brady* evidence that was withheld ***because of counsel's own failure to fill out the correct paperwork***, even after the trial court issued an order to compel those documents.  (Ex. 8 at 3, 13).  Even the judge expressed concern about proceeding to trial before Hamilton's counsel was given an opportunity to review the exculpatory documents.  (*Id.* at 13-14).  Defense counsel failed Hamilton again when he did not object or call for a mistrial once it became clear that the State would not call Williams or produce the exculpatory information at all.  (*Id.*; Ex. 5 at 5).

This failure is analogous to counsel's failure in *Harris*.  In *Harris*, the Seventh Circuit ruled that counsel's "performance fell below [an] objective standard of reasonableness" when he knew a toxicology report was important to his client's defense, he knew how to request one but did not, and even the trial court stated that the toxicology issue was critical to the affirmative

28

defense. *Harris*, 365 F.3d at 556. Here, Hamilton's trial counsel recognized the importance of evidence relating to Williams, requested the evidence using incorrect paperwork and failed to resubmit his request with the correct paperwork, and even the trial court expressed concern about proceeding without the documents. (Ex. 8 at 13-14; Ex. 5 at 5).

### (b) Counsel Failed to Object to an Inappropriate Sentence Enhancement

Hamilton's counsel did not object to Hamilton's sentencing under the HCA, even though the two prior offenses did not qualify under that sentencing scheme. (*See* Claim IV). Hamilton's trial counsel simply assumed that his client would be sentenced under the HCA. (Ex. 8 at 9). Hamilton's attorney stated on the record that it was "not necessary" to discuss Hamilton's priors at the sentencing hearing (Ex. 13 at 14), because "[i]f [Hamilton is] convicted on this case, he's doing life." (Ex. 8 at 9). Hamilton's trial counsel ignored prevailing professional norms when he failed to investigate Hamilton's prior convictions, and thus counsel's performance was unreasonable and constitutionally deficient. *See Wiggins*, 539 U.S. at 523.

### (c) Counsel Allowed Hamilton to Waive His Right to a Trial by Jury While Hamilton Was Under the Influence of Drugs

Hamilton's trial counsel allowed Hamilton to waive his right to a trial by jury while under the influence of prescription-strength psychotropic drugs. Trial counsel was surely aware of the fact that Hamilton was under the influence of psychotropic pain medication when he agreed to waive his right to a trial by jury. Hamilton stated in open court that he was under the influence of prescription-strength pain killers. (Ex. 5 at 9). The Seventh Circuit has held that a lawyer has a duty to conduct a "reasonable investigation" into his client's fitness (or competence) especially when presented with evidence that his client is mentally impaired. *See Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002) ("[W]here 'it will be apparent from . . .

29

conversation[s] with the defendant, or from other sources of information not requiring fresh investigation, that the defendant has some mental or other condition that will repay further investigation . . . then the failure to investigate will be ineffective assistance.'" (internal citation omitted)).

### (d)    Counsel Failed to Adequately Investigate the Facts of the Case

Hamilton's trial counsel failed to adequately investigate this case. Attorneys are given leeway to make strategic decisions, but it is never "strategic" for trial counsel to neglect to conduct a proper investigation into his or her client's case. *Kimmelman*, 477 U.S. at 384-85; *Harris*, 365 F.3d at 556 ("[T]he Supreme Court has repeatedly held that a failure to conduct a reasonable investigation may satisfy the performance prong of *Strickland*.").

Hamilton's trial counsel did not contact witnesses who would have explained the circumstances surrounding the crime, information necessary to provide factual predicate for discovery and Hamilton's arguments. Such testimony was necessary to show that Hamilton was forced to participate in the Vice Lords' set-up. Hamilton's trial counsel never interviewed Jeffrey Robson, Hamilton's co-defendant, nor did he interview Officer Jacques Polk, a Chicago Housing Authority officer who was on Hamilton's initial witness list and knew vital information about the neighborhood, James Williams, and Monique Griffith. Trial counsel failed to develop evidence related to arrest photos of Hamilton and Jeffrey Robson, in which only Hamilton's clothes were torn. This evidence could have shown that Hamilton was beaten and his clothes were torn when the gang forced him to partake in this event. Hamilton's attorney did not collect evidence showing that Hamilton had no control over the other Vice Lords members, and therefore could not be held legally accountable for their criminal conduct. In fact, counsel's only "investigation" consisted of incorrectly filing two legally ineffective subpoenas for two federal

30

officers—and then failing to remedy his mistake when he realized the officers were legally prohibited from testifying. (Ex. 9; Ex. 11 at 8-9).

### (2) Hamilton Was Prejudiced by His Lawyer's Constitutionally Deficient Performance

The relevant inquiry to determine whether a defendant was prejudiced in cases where the defendant alleges ineffective assistance of counsel is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669.

The state post-conviction courts ignored the very reasonable probability that trial counsel essentially led the trial court to an incorrect outcome. First, it is reasonably probable that if Hamilton's counsel waited for the exculpatory *Brady* material before beginning trial—or even took the time to correctly request those materials—the evidence would have created a reasonable doubt as to whether Hamilton voluntarily went to kidnap a drug kingpin for no discernable reason. If Hamilton's trial counsel had conducted ***basic legal research*** into how to serve a subpoena on federal agents, it is reasonably probable that these agents would have turned over valuable information instead of ignoring his requests. This information could have corroborated Hamilton's testimony that he would never voluntarily attempt to kidnap Williams, given Williams' status as a major drug dealer.

Second, there is a reasonable probability that if Hamilton's trial counsel interviewed Jeffrey Robson or Officer Polk, those witnesses would have provided additional leads and information to create reasonable doubt in Hamilton's possession of a firearm and voluntary presence at the scene of the crime. Both of these men could have shared first-hand accounts of the events surrounding Hamilton's arrest, including whether Hamilton possessed a weapon and whether Hamilton was forced into the Vice Lords' scheme to kidnap Williams.

Third, there is a reasonable probability that Hamilton would not have been sentenced under the HCA had his trial counsel objected to this inappropriate sentence enhancement. A clear explanation of Hamilton's prior two plea agreements would have shown the sentencing judge that Hamilton was ineligible for sentencing under the HCA. It is obvious that additional plea information would have changed the court's decision, given that the HCA clearly defines what offenses do and do not provide a basis for sentencing.

Finally, there is a reasonable probability that Hamilton would not have waived his constitutionally-guaranteed right to a trial by jury had his counsel insisted that any waiver hearing be postponed or had demanded a proper competency hearing at a future time when Hamilton was no longer under the influence of prescription-strength drugs.

**F.    This Court Should Hold an Evidentiary Hearing to Allow For Further Relevant Evidence to be Presented**

The federal district court may conduct its own hearing and make its own factual findings when items are missing from the state court's record (through no fault of petitioner), thereby preventing the federal court from properly evaluating the reasonableness of the state court's decisions. *See*, *e.g.*, *Price v. Thurmer*, 514 F.3d 729, 733-34 (7th Cir. 2008).

In order to ensure that Hamilton's fundamental constitutional rights to *Brady* evidence, accurate sentencing, a trial by jury, and effective assistance of counsel are safeguarded, this Court can and should do what the Illinois State courts failed to do. Hamilton respectfully requests that this Court conduct an evidentiary hearing to assess Hamilton's *Brady* evidence, Hamilton's prior plea agreements, Hamilton's purported jury waiver, and to evaluate the performance of Hamilton's trial counsel.

## PART IV.      REPRESENTATION

Answers (A)-(G): Petitioner was represented in all trial court proceedings by attorney J. Scott Arthur, 14315 108th Avenue # 222, Orland Park, IL 6046.  Petitioner was represented at his initial sentencing hearing by attorney John Lyke, 1505 E 53rd Street, Chicago, IL 60615. Petitioner was represented on direct appeal by public defender Eric M. Muellenbach, 203 N. LaSalle Street, 24th Floor, Chicago, IL 60601.  Petitioner was represented in post-conviction proceedings and all related appeals by James H. Mutchnik, Katherine Wheaton, Christopher Burrichter, and Sydney Schneider of Kirkland & Ellis LLP, 300 N. LaSalle St., Chicago, IL 60654.

## PART V.      FUTURE SENTENCE

Petitioner is currently serving life in prison pursuant to the now-repealed Illinois Habitual Criminal Act.

## <u>CONCLUSION</u>

WHEREFORE, for all of the reasons stated herein, Petitioner Darryl Hamilton respectfully requests that this Court issue a writ of habeas corpus to vacate his unconstitutional conviction and sentence, hold an evidentiary hearing on these matters, or grant any such other relief as may be appropriate and necessary to dispose of this matter as justice requires.


Dated:  September 17, 2014                          Respectfully submitted,


                                                     s/ Christopher S. Burrichter
                                                    James H. Mutchnik
                                                    Katherine H. Wheaton
                                                    Christopher S. Burrichter
                                                    Sydney L. Schneider
                                                    Kirkland & Ellis LLP
                                                    300 North LaSalle Street
                                                    Chicago, IL  60654
                                                    Tel:  312-862-2000
                                                    Fax:  312-862-2200

                                                    Counsel for Petitioner-Appellant Darryl
                                                    Hamilton, Sr.

## CERTIFICATE OF SERVICE

I hereby certify that foregoing Petition For Writ Of Habeas Corpus & Request For An Evidentiary Hearing was served on September 17, 2014, in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers upon:

        Chief of Criminal Appeals
        Attorney General's Office
        100 West Randolph - 12 Floor
        Chicago, IL 60601

        Tarry Williams, Warden
        Stateville Correctional Center
        16830 So. Broadway St.
        P.O. Box 112
        Joliet, IL 60434

                                        s/ Christopher S. Burrichter
                                         Christopher S. Burrichter
                                         Kirkland & Ellis LLP
                                         300 North LaSalle Street
                                         Chicago, IL 60654
                                       Tel: 312-862-2000