# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DARRYL HAMILTON,              )
      Petitioner,           )
                           )
v.                          )         14 C 7252
                           )
TARRY WILLIAMS, Warden,    )
Stateville Correctional Center,    )
      Respondent.         )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This case comes before the Court on the petition for a writ of habeas corpus filed by petitioner Darryl Hamilton ("Hamilton") pursuant to 28 U.S.C. § 2254 ("Section 2254"). For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

In 1999, Hamilton was charged with aggravated kidnapping. Following a bench trial in the Circuit Court of Cook County, he was sentenced to life in prison pursuant to Illinois's Habitual Criminal Act (the "HCA"). 720 ILCS 5/33B-1 (2006). Hamilton is currently incarcerated at Stateville Correctional Center in Crest Hill, Illinois, where he is in the custody of the warden of that facility, respondent Tarry Williams ("Respondent").

The following facts and procedural posture relevant to Hamilton's Section 2254 petition are drawn from the state court record. This Court will presume that the state courts' factual determinations are correct for the purposes of habeas review unless contested by Hamilton. *See* 28 U.S.C. § 2254(e)(1); *Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013).

## I. The Kidnapping and Hamilton's Trial

On June 29, 1999, James Williams ("Williams") and Monique Griffith ("Griffith") walked out of Williams' apartment building to leave for the airport when they were approached by members of the Vice Lords gang (the "Vice Lords"). These members drew guns on Williams and Griffith, forced them by gunpoint into a van, and sped away. Hamilton sat in the van as Williams and Griffith were thrown into it by the Vice Lords. A neighbor watched the incident occur and saw the van and its occupants drive away. Shortly after the van started moving, a police chase ensued where Hamilton was subsequently apprehended after a foot chase.

Hamilton originally met with the Vice Lords because he thought they wanted to purchase drugs. Hamilton testified at trial that he learned prior to the incident that the Vice Lords were not interested in purchasing drugs, but were merely using the meeting with him as a pretext for getting revenge on Williams for selling them "bad drugs." As he learned the Vice Lords' true intention, he "told them, hell no, I am not going to get involved in that[.]" The Vice Lords refused to let Hamilton leave, beat

and pistol-whipped him, and threw him into the van before kidnapping Williams and Griffith.  They also threatened to kill his family unless he agreed to cooperate and call Williams.  Hamilton made the call and told Williams that he was coming over with friends to purchase a half-kilo of cocaine.

On February 20, 2004, after a bench trial, Hamilton was found guilty of aggravated kidnapping.  On March 28, 2006, Hamilton was sentenced to a term of natural life imprisonment.

## II. Post-Trial Proceedings

Hamilton directly appealed his conviction to the Illinois Appellate Court, which denied relief.  He then filed an unsuccessful petition for leave to appeal ("PLA") to the Illinois Supreme Court.  Next, he filed a *pro se* state post-conviction petition and was appointed counsel to amend his post-conviction petition, which was dismissed. He appealed to the Illinois Appellate Court, which affirmed the trial court's denial of post-conviction relief.  Hamilton then filed a PLA, which was denied.  Hamilton has not filed any other petitions in state court in relation to this conviction.  He has not filed any previous petitions for habeas corpus relief in federal court with respect to this conviction.

## III. Hamilton's Section 2254 Petition

Hamilton's habeas petition raises the following claims:

A.   The State failed to prove the element of secret confinement beyond a
     reasonable doubt. (Claim A)

B.   The State withheld exculpatory evidence about Williams' status as a gang member and drug dealer. (Claim B)

C.   Hamilton did not knowingly and voluntarily waive his right to a jury trial. (Claim C)

D.   Hamilton was improperly sentenced under a sentencing statute in which he was ineligible (Claim D)

E.   Hamilton's trial counsel was ineffective because:

   1. He failed to obtain exculpatory evidence of Williams' drug dealing and gang affiliation before proceeding to trial. (Claim E(1))

   2. He failed to argue that Hamilton's prior convictions did not count as Class X felonies for the purpose of the HCA. (Claim E(2))

   3. He allowed Hamilton to waive his right to a jury trial while under the influence of Tylenol with codeine. (Claim E(3))

   4. He failed to interview Hamilton's codefendant and Jacques Polk as potential witnesses. (Claim E(4))

The Court agrees with both parties that Hamilton has exhausted his state court remedies because no state court avenue remains by which Hamilton may present his claims.  *See* 28 U.S.C. § 2254(c); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) ("Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.").  Thus, Hamilton's claims are

not barred by non-retroactivity principles or by the statute of limitations. The parties quarrel over two of Hamilton's claims for failure to raise them on appeal or in the state courts. We will address these issues in turn.

## DISCUSSION

A habeas petitioner is entitled to a writ of habeas corpus under Section 2254 if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of Section 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id*. at 407. The unreasonable application standard "is particularly exacting" as to meet it, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

As a threshold issue, Hamilton requests an evidentiary hearing. If review is permitted under Section 2254(d), an evidentiary hearing may be held to determine whether petitioner is being held in violation of the Constitution under Section 2254(a). *See Mosely v. Atchison*, 689 F.3d 838, 854 (7th Cir. 2012) (internal citation omitted). Based on the reasons below, the Court does not find that an evidentiary hearing is warranted.

## I. Claim A—Secret Confinement Element

In Claim A, Hamilton argues that the State failed to prove the element of secret confinement beyond a reasonable doubt. The evidence at trial included the parties' stipulation that a neighbor saw Griffith and Williams being forced into the van and the police began pursuing the van shortly thereafter. Hamilton claims that the Illinois Appellate Court erroneously concluded that the State proved the "secret confinement" element even though the evidence indicated that Griffith was never concealed from public view. Hamilton insists that this issue presents a mixed question of law and fact because he is not challenging the state court's interpretation of "secret confinement". Rather, he argues that there was insufficient evidence to prove beyond a reasonable doubt that Hamilton "secretly confine[d] another against his or her will." 720 ILCS

5/10-1(a)(1).   However, we do not find this to be a mixed question of law and fact.

Although Hamilton presents this as a factual issue, he is essentially asking us if

Griffith's confinement in the back of a moving van with her head down satisfies the

"secret confinement" element even though a neighbor witnessed the incident and the

police pursued the van shortly thereafter.   Hamilton's argument circumvents a pure

question of law—"does the 'secret confinement' element require that the kidnapped

individual be taken out of public awareness for a significant or substantial period of

time?"   *See Goodwin v. Pfister*, 12 CV 2154, 2013 WL 3761556, at *5 (C.D. Ill. July

16, 2013).   The answer to this question hinges on whether the evidence is sufficient to

determine if the state court was correct in its interpretation of the statute.   *See*

*Goodwin*, 2013 WL 3761556, at *5 (citing *Bates v. McCaughtry*, 934 F.2d 99, 103

(7th Cir. 1991).   The Court holds that there is a sufficient factual basis to categorize

the question as one of state statutory interpretation.   Additionally, the Illinois

Appellate Court also found this question to be one of state law because the facts were

not in dispute, and the issue was whether the facts met the definition of a statutory

term.   In its order, the Illinois Appellate Court found:

> Here, the issue is whether the undisputed facts of the case constitute "secret
> confinement" under section 10-1(a) of the Criminal Code of 1961 (720 ILCS
> 5/10-1(a) (West 2004)).   The question is therefore one of law and this court will
> review the finding of "secret confinement" *de novo*.
>
> The crime of kidnaping occurs when a person knowingly and secretly confines
> another against his will (720 ILCS 5/10-1(a) (West 2004)).   The offense of

kidnaping is elevated to aggravated kidnaping if the defendant is armed with a firearm (720 ILCS 5/10-2(a)(6) (West 2004)).

Secret confinement is demonstrated by either the secrecy of the confinement or the secrecy of the place of confinement. . . [t]he precedent in Illinois is clear that one person holding another in a car in motion on a public highway constitutes secret confinement. *People v. Bishop*, 1 Ill. 2d 60, 64 (1953); *see also People v. Harris*, 68 Ill. App. 3d 12, 14 (1979) ("Illinois law is well settled that confinement in an automobile satisfies [secret confinement]"); *People v. Banks*, 130 Ill. App. 3d 948, 950 (1985) ("confinement in an automobile satisfies the statutory requirement of secret confinement").

We agree with the Illinois Appellate Court's above-reasoning that this is a question of state law and the Court does not have subject-matter jurisdiction to address it. *See Bates*, 934 F.2d at 103 ("[W]hether the state court correctly understands the law is a question beyond the reach of a federal court on collateral attack." ). Even assuming a question of fact existed, the Court also finds that any rational trier of fact could have found the "secret confinement" element was satisfied by the State beyond a reasonable doubt because Griffith was confined to the back of a moving van and forced to lie with her head down. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Therefore, Claim A is not cognizable in a federal habeas proceeding.

## II. Claim B—Exculpatory Evidence

With respect to Claim B, Hamilton asserts that the State withheld exculpatory evidence about Williams' status as a gang leader and drug dealer. Hamilton argues that the Illinois Appellate Court unreasonably applied *Brady v. Maryland* when it held that Hamilton was not entitled to the evidence related to victim James Williams. 373

U.S. 83 (1963). "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. Evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A state court's application of *Brady* is unreasonable if it is "well outside the bounds of permissible differences of opinion." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (quoting *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008)). Evidence is also "material" if its disclosure would create a "reasonable probability that the [trial] result would have been different." *Id*. at 399. The "reasonable probability" standard is lower than a "preponderance" of the evidence standard; a petitioner need only demonstrate that the withheld evidence undermines confidence in the verdict. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Before the trial, Hamilton sought all records and information concerning Williams. The Illinois Appellate Court found that the trial court ordered the prosecution to produce this evidence so his trial counsel could use it to impeach Williams. However, Williams did not testify at trial and Hamilton claims he never received the records and information, in violation of the court order. Hamilton argues that the evidence was material because it might have corroborated his testimony that he was caught in the middle of a battle between two rival gangs and the evidence

could have been used to impeach Griffith, who may have been involved in Williams'

criminal enterprise. The Illinois Appellate Court concluded that it:

> Did not see how evidence of Williams' [sic] crimes and status affects the
> credibility of Griffith's testimony or of Hamilton's testimony that members of
> the Vice Lords beat him and threatened to kill his family if he did not
> participate in the kidnaping. The trial court expressly accepted, as credible, the
> evidence that Williams sold drugs. We cannot say that Hamilton has made a
> substantial showing that the trial court would have reached a different result if
> it heard the additional, largely redundant evidence about Williams that
> Hamilton sought from the State.

During trial, Hamilton did introduce into evidence a warrant affidavit and a police

report indicating that officers had searched Williams' property and found $60,000

worth of cocaine. The trial court found that "there was no issue but that James

Williams was a drug dealer. There was no issue but that he was somebody to be

afraid of." Hamilton insists that the trial court's acceptance that Williams "sold

drugs" is not an adequate substitute for considering concrete and specific evidence

about the magnitude of Williams' gang leadership and criminal enterprise.

   The question is whether the Illinois Appellate Court unreasonably held that any

withheld evidence would not have changed the result of Hamilton's trial. The Court

finds that the state courts' rejection of Hamilton's due process claim based on the

exculpatory evidence involving Williams' status as a drug dealer and gang leader is

neither contrary to nor an unreasonable application of *Brady*. The trial court

sufficiently learned of Williams' drug dealing and gang leader status from the

evidence admitted—the trial judge specifically acknowledged that Williams was a

drug dealer. We do not find that whatever information was in the records about Williams' "magnitude" of criminal activity would have bolstered Hamilton's defense or affected Griffith's credibility enough to change the result of the proceeding. It was clear to the trial judge that Williams was a potential threat to Hamilton and he took this into consideration. Also, any information about Williams' criminal past used to impeach Griffith would not have been material to her alleged involvement with Williams' criminal enterprise, or would have lessened her credibility in so much that the trial result would have differed, since her prior convictions were admitted as impeachment evidence during the trial. These prior convictions sufficiently impeached her credibility. In light of this reasoning, the Illinois Appellate Court's application of *Brady* was objectively reasonable. Thus, Hamilton is not entitled to habeas relief for Claim B because the state courts' decisions were not contrary to or an unreasonable application of *Brady*.

## III. Claim C—Jury Waiver

In Claim C, Hamilton argues that he did not knowingly and voluntarily waive his right to a jury trial, as required by the Sixth and Fourteenth Amendments, because he was taking Tylenol with codeine to relieve pain caused by a jaw injury he suffered in jail before his trial started. Criminal defendants are entitled to a trial by jury unless they intelligently and competently waive this constitutional right. *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) ("This protecting duty imposes the serious and weighty

responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused."). The decision to waive a jury trial is among those fundamental decisions about a case the defendant alone has the authority to make. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to…waive a jury"). Whether or not there is an "intelligent, competent self-protecting waiver of jury trial" depends on the "unique circumstances of each case" and counsel may not make this decision on his behalf. *U.S. ex rel. Williams v. DeRobertis*, 715 F.3d 1174, 1179 (7th Cir. 1983).

The Illinois Appellate Court found that Hamilton did not present any evidence that his pain medication had significant psychotropic effects or that he did not actually understand his right to a jury trial. The court highlighted that the trial judge asked Hamilton about his medication and his understanding of the right to a jury trial. Additionally, the transcript reveals that Hamilton informed the court about his pain medication and his education, and told the court he wanted a bench trial.

Hamilton contends that the trial judge did not ask him whether his pain medication impaired his ability to understand the consequences of waiving his right to a jury trial. According to the record, the trial judge explained to Hamilton that he could either have a bench or jury trial, noting the differences. Hamilton stated that he understood what a bench trial entailed and when the judge asked him which kind of

trial he wanted, Hamilton stated he wanted a bench trial. Further, the trial judge asked Hamilton if his signature was on the jury waiver and if he signed it because he wanted to give up his right to a jury trial. Hamilton answered "Yes, sir" to both questions. When the trial judge asked Hamilton if he was on any medication, Hamilton stated that he was taking "Tylenol III" due to a broken jaw. At that moment, the trial judge inquired, "[y]ou want to go ahead with your trial today even though your jaw was broken and you're on pain medication?" Hamilton responded affirmatively. The trial judge then asked if Hamilton was having any trouble staying awake or understanding what was occurring, which Hamilton denied. After engaging in this colloquy with Hamilton, the trial court found that Hamilton had knowingly and voluntarily waived his right to a jury trial.

The trial court did everything required to inquire about Hamilton's competence and potential impairment in a non-perfunctory manner. Moreover, nothing in the record indicates that Hamilton was suffering from side effects of Tylenol with codeine and the Illinois Appellate Court's affirmance of the trial judge's acceptance of Hamilton's jury waiver was not contrary to or an unreasonable application of Supreme Court precedent. The trial judge's decision, affirmed by the Illinois Appellate Court, clearly was correct.

**IV. Claim D—Improper Sentence**

Hamilton claims that he is entitled to a writ of habeas corpus because he was improperly sentenced under a sentencing statute for which he is ineligible, in violation of his Fourteenth Amendment contract-rights and fundamental fairness guarantees. The Fourteenth Amendment guarantees all citizens, including those in prison, the right to due process under the law. U.S. Const. amend. XIV. One of these due process rights is a prisoner's contract-based right to have the terms of his plea agreement enforced. *Santobello v. New York*, 404 U.S. 257, 262-63 (1971). Under *Santobello*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262.

Before it was repealed, the HCA mandated a sentence of natural life in prison if a defendant were convicted of three separate "Class X" offenses within a 20-year period. The HCA was repealed in 2009 and is not retroactive. *See* 720 ILCS 5/33B-1 (West 2006) (repealed by Pub. Act 95-1052 § 93 (eff. July 1, 2009)). At sentencing, the State introduced evidence of two prior crimes Hamilton committed in a 20-year period that qualified as "Class X" felonies, one from 1980 for armed robbery and one from 1995 for home invasion.

Hamilton argues that his 1980 conviction does not qualify under the HCA because his negotiated plea was contingent on assurance from the State's Attorney

that this conviction would never be used against him for future sentence
enhancements so long as Hamilton did not commit another Class X felony for a period
of ten years.  As for his 1995 conviction, which occurred more than ten years later,
Hamilton avers that this conviction also does not qualify under the HCA because the
trial court failed to admonish him that a three-year Mandatory Supervised Release
("MSR") would be added to his sentence.  Based on the circumstances surrounding
these convictions, Hamilton insists that a life sentence pursuant to the HCA violates
prevailing notions of fundamental fairness.

      The Illinois Appellate Court touched on this issue when discussing Hamilton's
ineffective assistance of counsel claims, and Hamilton properly raised it in his
petition.  The state court concluded that Hamilton provided no evidence to support the
unsubstantiated allegation about the plea bargain from the 1980 armed robbery
conviction.  With respect to the 1995 conviction for a home invasion, the Illinois
Appellate Court cited *People v. Whitfield*, 217 Ill. 2d 177 (2005), where in that case,
the Illinois Supreme Court held that the State violated its plea agreement with a
defendant when the State failed to admonish the defendant that he would need to serve
a three-year term of MSR after he completed the agreed sentence.  *Id.* at 196.
However, the Illinois Appellate Court noted that *Whitfield* did not help Hamilton
because: (i) Hamilton failed to present any evidence that the trial court in 1995 failed
to admonish him about the three-year term of MSR; (ii) Hamilton failed to present any

evidence that the alteration of the agreed sentence would change the classification of the crime; and (iii) *Whitfield* does not apply to cases finalized before 2005 based on *People v. Morris*, 236 Ill. 2d 345, 366 (2010).

Although state court records pertaining to these convictions cannot be located, and key players of the proceedings are unavailable, this does not mean that the Illinois Appellate Court's decision is contrary to or an unreasonable application of clearly established federal law. Hamilton failed to produce evidence about his conversations with the State's Attorney during his 1980 plea or in support of the State's alleged failure to admonish Hamilton about MSR. Consequently, the Court finds that the record sufficiently shows that the State introduced evidence to the sentencing judge of Hamilton's two prior "Class X" felonies that fit the statutory requirements of the HCA at the time he was convicted of aggravated kidnapping. Thus, Hamilton is not entitled to habeas relief based on Claim D for a violation of the Fourteenth Amendment contract-rights or fundamental fairness guarantees.

## V. Claims E(1), E(2), E(3) and E(4)—Ineffective Assistance of Trial Counsel

In his Section 2254 petition, Hamilton raises four claims based on ineffective assistance of trial counsel. The Court must first address Claims E(3) and E(4). Respondent insists that these claims were never raised in state court. After reviewing Hamilton's past petitions, there are mentions that his trial counsel made no effort to evaluate the effect of the Tylenol codeine and stood silent as the trial judge inquired

about the validity of Hamilton's jury trial waiver that align with Claim E(3). However, Hamilton does not list these accusations as a separate ineffective assistance of trial counsel claim in his past petitions or argue that counsel was ineffective because of his actions during the jury trial waiver. Instead, Hamilton shares this information about his trial counsel when arguing his claim for why he did not knowingly and voluntarily waive his right to a jury trial. The mention of these facts lodged in Claim E(3) is not enough to "cast [this claim] in federal constitutional terms through one complete round of state review." *See Stevenson v. Gaetz*, 11 C 4394, 2013 WL 1385557, at *3 (N.D. Ill. Apr. 3, 2013). This conclusion is not affected by Hamilton's lengthy argument in his petition and reply memorandum that he adequately raised Claim E(3) in his state post-conviction proceedings. In sum, Claim E(3) is procedurally defaulted for failure to present it through a complete round of state court review because it, specifically, is not sufficiently presented in his direct appeal or state post-conviction proceedings as an ineffective assistance of counsel claim.

As for Claim E(4), in his state court petition, Hamilton complains of his trial counsel's failure to conduct the necessary factual research, including specific mention of his codefendant and Jacques Polk as potential witnesses. Thus, Claim E(4) was clearly raised in Hamilton's post-conviction proceedings and is not barred. We will address its merits.

Hamilton's surviving ineffective assistance of trial counsel claims are as follows: (i) Hamilton's trial counsel was ineffective because he failed to obtain exculpatory evidence of Williams' drug dealing and gang affiliation before proceeding to trial (Claim E(1)); (ii) Hamilton's trial counsel was ineffective because he failed to argue that Hamilton's prior convictions did not count as Class X felonies for the purpose of the HCA (Claim E(2)); and (iii) Hamilton's trial counsel failed to interview Hamilton's codefendant and Jacques Polk as potential witnesses (Claim E(4)). Under *Strickland v. Washington*, to establish an ineffective assistance of counsel claim, Hamilton must show that: (i) his counsel's performance fell below an objective standard of reasonableness; and (ii) he suffered substantial prejudice as a result. *See* 466 U.S. 688 (1984). To judge the reasonableness of the state court's adjudication, this Court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision." *Harrington*, 562 U.S. at 88. The "bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one." *Murrell v. Frank,* 332 F.3d 1102, 1111 (7th Cir. 2003).

The Illinois Appellate Court rejected Hamilton's ineffective assistance of trial counsel claims because of the following arguments and theories: (i) the record did not support an inference that Hamilton suffered any prejudice from the lack of evidence of Williams' gang status and drug income (applicable to Claim E(1)); (ii) Hamilton failed to present statements from other witnesses, that counsel did not present, to

establish how this failure to investigate or lack of preparation prejudiced him

(applicable to Claim E(4)); and (iii) Hamilton failed to make a substantial showing of

ineffective assistance of trial counsel at sentencing (applicable to Claim E(2)).

After thoroughly reviewing the record, this Court agrees that the Illinois

Appellate Court's rejection of Hamilton's ineffective assistance of trial counsel claims

was reasonable. A trial counsel's decisions to present certain witnesses, defenses, or

evidence receive much deference because they are strategic choices and "because of

the distorting effect of hindsight in making a *post hoc* assessment of counsel's

strategic assessments." *Vera-Natal v. Hulick*, 05 C 1500, 2005 WL 3005613, at *11

(N.D. Ill. Nov. 7, 2005); *see also Fountain v. United States*, 211 F.3d 429, 434 (7th

Cir. 2000) ("[M]any trial determinations, like so many other decisions that an attorney

must make in the course of representation, are a matter of professional judgment.

Thus, we must resist a natural temptation to become a 'Monday morning

quarterback.' ") (internal punctuation and citations omitted). Nothing in the record

indicates that there was an unreasonable application of the controlling law to the facts

because each of the ineffective assistance of trial counsel claims lack merit and fail to

show that Hamilton faced substantial prejudice as a result. The lack of prejudice

dooms any ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687.

Therefore, this Court declines to delve into specific reasons why each of the

ineffective assistance of trial counsel claims fail under *Strickland* because we have

found that the Illinois Appellate Court's decision was not contrary to clearly established federal law.

## VI.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should be issued.  Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2)[t]he certificate must identify each substantial constitutional question; (3)[i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4)[a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5)[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal."  *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

Based on the reasons stated in this opinion, Hamilton has not established "that reasonable jurists could debate whether the challenges in his habeas petition should

have been resolved differently or that his petition adequately shows a sufficient change of the denial of a constitutional right that he deserves encouragement to proceed further." *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Therefore, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Hamilton's petition for a writ of habeas corpus and declines to issue a certificate of appealability.

Charles P. Kocoras
United States District Judge

Dated:  4/15/2015